<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HENRY J. PAYANO, | Civil No. 13-2528 (NLH) |
| Plaintiff, | |
| v. | **OPINION** |
| CITY OF CAMDEN, et al., | |
| Defendants. | |

**APPEARANCES:**

CONRAD J. BENEDETTO
1814 East Route 70, Suite 350
Cherry Hill, NJ  08003
Attorney for Plaintiff Henry J. Payano

BRIAN E. TURNER
MEREDITH A. ACCOO
TIMOTHY J. GALANAUGH
CAMDEN CITY ATTORNEY
P.O. Box 95120
Camden, NJ 08101
Attorneys for City of Camden, City of Camden Police Dept.,
Tya Miles

<u>**HILLMAN, District Judge**</u>:

In this case, Henry J. Payano claims that the City of
Camden, the Camden City Police Department, and Camden Police
Officer Tya Miles violated his constitutional rights on August
19, 2012, when Officer Miles seized and used excessive force

against Payano.[1]  Before the Court is a motion for summary
judgment, pursuant to Federal Rules of Civil Procedure 56, filed
by the Defendants.  For the reasons expressed below, and
pursuant to Rule 78, this Court will deny the summary judgment
motion of Officer Miles, grant summary judgment in favor of the
City, and dismiss the Police Department as defendant.

## I.  BACKGROUND

Plaintiff's Complaint names the City of Camden, the Camden
Police Department, Camden Police Officer Tya Miles, John Does 1
through 10, and fictitious corporations 1 through 10.  He
asserts that on April 19, 2012, between 4:00 p.m. and 5:00 p.m.,
he was working at B & B Grocery, a store owned and operated by
his mother Alicia Peralta and his grandmother.  He alleges that
while he was sitting on a milk crate in front of the ice machine
outside the store and speaking with his next door neighbor, Pete
Garcia, who was sitting on his front steps, a police car driven
by Defendant Miles stopped in front of the store.  Miles
allegedly stated to Payano:  "I am getting tired of this shit."

---

[1] The action was initially filed by Alicia Peralta, Payano's
mother and guardian, because Payano was a minor at the time the
events described in the Complaint occurred and at the time the
Complaint was filed.  After Payano reached the age of majority,
the caption of the Complaint was amended to show that Payano is
the sole Plaintiff.  (ECF No. 21.)

(ECF No. 1 at 3.)  According to the Complaint, when Miles asked Payano to prove that he lived there, Payano entered the store and asked his grandmother, who was working at the cash register, to go upstairs to retrieve his identification.  Payano asserts that, although he made no sudden movements, when he turned around he saw Miles pointing her gun at him.  She allegedly instructed him to exit the store.  He alleges that when he did so, Miles grabbed him by the waistband, threw him onto the ice machine, handcuffed him, and then threw him into the back of her car.

Payano further asserts that when a second male police officer arrived on the scene, Payano was removed from the police car and his handcuffs removed.  The second officer then told Payano to hit him.  Payano alleges that he "had not physically resisted or assaulted Defendant Miles or the back-up police officer in any way and the force used against him was unnecessary, unreasonable, and excessive."  Id. at 4.  Payano further asserts that, as a result of the incident, he suffers disc herniation, bulging discs, pain, and other injuries.

Payano claims that Defendants are liable under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act for unlawful seizure and use of excessive force in violation of the Fourth Amendment and violation of the First Amendment (Counts One, Two, Three,

3

Seven, Nine); the City of Camden and the Camden Police Department are liable for Miles' violation of Payano's constitutional rights because Miles acted "pursuant to the customs, policies, usages, practices, procedures, and rules of the City of Camden, and the City of Camden Police Department, all under the supervision of ranking officers of said department" (Count Four)(ECF No. 1 at 8); Defendants are liable for assault and battery under New Jersey law (Counts Five, Six); and Defendants are liable under New Jersey law for intentional infliction of emotional distress (Count Eight).

Defendants have filed a motion for summary judgment on all claims, arguing that the undisputed facts show that Miles did not use excessive force in violation of Payano's constitutional rights and that she is entitled to qualified immunity; the City of Camden and its police department are not liable under 42 U.S.C. § 1983 for violation of Payano's rights; and the claims arising under New Jersey law lack merit. In response, Payano argues that the Court should deny summary judgment because there are issues of material fact that must be resolved by a jury and that Miles is not protected by qualified immunity.[2]

---

[2] Neither Defendants nor Payano discuss the violation of the First Amendment referenced in the Complaint. The Court will presume that Payano has withdrawn the First Amendment claim.

4

## II.  DISCUSSION

A.   Summary Judgment Standard

Rule 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010).  "An issue of material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 545 (3d Cir. 2012).  The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (quoting Anderson v. Liberty Lobby, 477 U.S. at 255); see also Aman v. Cort Furniture Rental Corp., 85 F. 3d 1074, 1080-81 (3d Cir. 1996).

5

B.   Fourth Amendment

Plaintiff claims that his civil rights under the United States Constitution and New Jersey Constitution were violated. The New Jersey Civil Rights Act ("NJCRA") creates a private cause of action for violations of civil rights secured under the New Jersey Constitution. See Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). "This district has repeatedly interpreted NJCRA analogously to § 1983." Hottenstein v. City of Sea Isle City, 977 F. Supp. 2d 353, 365 (D.N.J. 2013); see also Rezem Family Associates, LP v. Borough of Millstone, 423 N.J. Super. 103 (App. Div. 2011).  The Court will combine consideration of Payano's claims under the New Jersey Constitution with the analysis of his Fourth Amendment claims.

To recover under 42 U.S.C. § 1983 a plaintiff must show: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures."  U.S. Const. amend. IV.  "[W]henever a police officer

6

accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1968). An officer without a warrant or probable cause may conduct a "brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Under the reasonable suspicion standard, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant intrusion." Terry, 392 U.S. at 21.

When a plaintiff alleges use of excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures. See Tolan v. Cotton, 134 S.Ct. 1861, 1865 (2014); Graham v. Connor, 490 U.S. 386, 394 (1989). "The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006). "Determining whether the force used to effect a particular seizure is 'reasonable' ... requires ... careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight." Graham, 490 U.S. at 396.  In addition, the Third
Circuit instructs a court to consider "the possibility that the
persons subject to the police action are themselves violent or
dangerous, the duration of the action, whether the action takes
place in the context of effecting an arrest, the possibility
that the suspect may be armed, and the number of persons with
whom the police officers must contend at one time." Santini v.
Fuentes, 795 F.3d 410, 417 (3d Cir. 2015) (quoting Sharrar v.
Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).  The inquiry is
objective and fact specific. See Graham, 490 U.S. at 397;
Santini, 795 F.3d at 417.  "Reasonableness is to be evaluated
from the perspective of a reasonable officer on the scene,
rather than with the 20/20 vision of hindsight." Carswell v.
Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) (internal
quotation marks and citation omitted).

In resolving questions of qualified immunity at summary
judgment, a court must first ask "whether the facts '[t]aken in
the light most favorable to the party asserting the injury, . .
. show the officer's conduct violated a [federal] right."
Tolon, 134 S.Ct. at 1865 (quoting Saucier v. Katz, 533 U.S. 194,
201 (2001)).  The second prong of the qualified immunity
analysis requires a court to determine "whether the state of the
law at the time of an incident provided fair warning to the

8

defendants that their alleged [conduct] was unconstitutional."
Tolon, 134 S.Ct. at 1866 (citation and internal quotation marks
omitted).

Relying on police reports, Miles argues that there is no
genuine issue of material fact regarding the Fourth Amendment
and use of excessive force and that she is entitled to summary
judgment as a matter of law under 42 U.S.C. § 1983 and New
Jersey law.  Miles admits that she pointed her gun at Payano but
she argues that Miles reasonably believed that Payano was
committing a disorderly persons offense by "engag[ing]  in
fighting or threatening . . . or [that he was] "creat[ing] a
hazardous or physically dangerous condition by any act which
serves no legitimate purpose of the actor" in violation of N.J.
Stat. Ann. § 2C:33-2(a).  Miles claims that because Payano "took
a fighting stance with closed fists, during a conversation with
Officer Miles and one of two males sitting on a step nearby
Plaintiff stood up as Officer Miles was interacting with
Plaintiff," Miles "reasonably believed she had a duty to arrest
Plaintiff and use her training to use the appropriate procedures
to ensure her safety." (ECF No. 62 at 32.)  Miles maintains that
because Payano "verbally and physically resisted Officer Miles
during the course of their brief interaction on April 19, 2012[,
she] put Plaintiff up against the ice machine outside of B & B

Grocery and handcuffed him to subdue him and guide him to submit
to arrest and custody." Id. at 32-33.

Defendants' argument ignores the deposition of Payano and
the legal requirement that this Court is required to view the
facts in the light most favorable to the party opposing summary
judgment. Payano's description of the incident, as set forth in
his deposition, conflicts with Miles' version of the incident.
In his deposition, Payano testified that the day after Miles had
given his mother parking tickets and his mother had complained
to Miles' supervisor about her conduct, Payano was sitting on a
milk crate in front of his family's grocery store and speaking
with his neighbor Pete Garcia, who was sitting on the front
stoop. Payano testified that he observed Officer Miles drive
around the block four times: "She kept on driving around the
block, laughing, ha, ha, ha. Drive back. At one point she
said, oh, I'm tired of this asshole. Sorry for saying it like
that. She pulled up, and that's when everything happened."
(ECF No. 62-6 at 16.) Payano further testified that the fourth
time she drove around the block, Miles parked in front of
Garcia's property and the ice machine and the following
occurred:

> Payano: And she told me, I'm tired – I'm tired of
> this shit. She came – she pulled up. She tried to
> ask me for identification. I told her, I said – I

10

told her I don't have it on me.  I have to go inside
to get it.  I'm going inside.

Q:  Yes?

Payano:  My identification was upstairs.  I told my
grandmom, grandmom, could you get my ID upstairs?

Q:  Yes?

Payano:  By the time I turned around, she had a gun
pointed out at me telling me to come outside.

Q:  Yes?

Payano:  She grabbed me, threw me on the freezer.

Q:  Yes?

Payano:  Put the cuff on me, put me in the car.  And
three minutes later, five minutes later, that's when
the other officer came.  They took me out the car,
took the cuff[s] off me.

Q:  Yes?

Payano:  And the cop, you tough?  Swing.  That's when
they took me off the cuff.  They like [told me to]
swing.  And I ain't do nothing.  They put me back in
handcuff[s], took me to the station.

(ECF No. 62-6 at 19.)

Payano also testified that he lost consciousness for a
period of time when Miles threw him against the ice machine,
that his family took him to the emergency room at Virtua West
Jersey on the day of the incident after the police released him
from custody, and that he received treatment at the emergency

room and subsequently from other doctors for injuries to his
back, neck, shoulder and mental health. (ECF No. 62-6 at 9.)

By disregarding Payano's deposition and his version of
events, Miles argues that the facts respecting the excessive
force claim are undisputed and that she is entitled to judgment
on the Fourth Amendment claims.  However, as explained above, a
court may not resolve factual disputes on summary judgment and
is required to "view the evidence in the light most favorable to
the opposing party."  See Tolon, 134 S.Ct. at 1866 (quoting
Adickes, 398 U.S. at 157).  As the Supreme Court recently
emphasized, "[t]he witnesses on both sides come to this case
with their own perceptions, recollections, and even potential
biases.  It is in part for that reason that genuine disputes are
generally resolved by juries in our adversarial system." Tolon,
134 S.Ct. at 1868.

Viewing the evidence in the light most favorable to Payano,
this Court finds that Payano's deposition creates disputed
issues of material fact with respect to whether Miles unlawfully
seized Payano and whether she used excessive force in violation
of the Fourth Amendment.  The conflicting facts, taken in the
light most favorable to Payano, demonstrate that, by pointing
her gun at Payano, throwing him on to an ice machine,
handcuffing him, and transporting him to the police station,

Miles violated Payano's Fourth Amendment rights prohibiting seizure without reasonable articulable suspicion and use of excessive force.  Moreover, if Payano's version of events is true Miles is not entitled to qualified immunity because, in 2012 a reasonable police officer would have known that Miles' conduct violated Payano's Fourth Amendment rights.

First, the facts viewed in the light most favorable to Payano demonstrate that Miles seized Payano without reasonable suspicion that criminal activity was afoot.  Payano testified that while he was working at the grocery store, he was sitting on a milk crate outside the store near the ice machine and speaking with his next door neighbor, who was sitting on the stoop, for about one-half hour before Miles directed him to provide identification, pointed her gun at him, handcuffed him, and took him to the police station.  Under Payano's version of events, nothing he did suggested that he was acting suspiciously or unlawfully.  Therefore, under the facts presented in Payano's deposition, a reasonable police officer would not have suspected that criminal activity was afoot.  In other words, it would have been clear to a reasonable police officer that Payano's conduct, viewed in the light most favorable to him, did not provide reasonable suspicion of illicit activity necessary for a Terry stop.  See Couden v. Duffy, 446 F.3d 483, 495-96 (3d Cir. 2006)

13

(holding that conduct consisting of "a young man exiting a car parked near a house, walking from the car into the garage of the house while carrying a skateboard and then looking into a window of the house, turning on its brights, and honking" did not provide reasonable suspicion); Johnson v. Campbell, 332 F.3d 199, 209 (3d Cir. 2003) (finding no basis for reasonable suspicion where the person was "drinking coffee, flipping through a newspaper, pacing, and rubbing his head").

Second, Payano's version of the incident, if believed by a jury, could demonstrate that Miles used excessive force against Payano when she pointed a gun at his head and threw him on to the ice machine.  In 2012, a reasonable officer would have known that pointing a gun at Payano and throwing him on to the ice machine was excessive, given that, under Payano's version of events, he did nothing threatening when he got up from the milk crate and went into the grocery to ask his grandmother to get his identification.  See Couden, 446 F.3d at 497 (finding that officers violated Adam Couden's clearly established Fourth Amendment rights when they jumped on him, pointed a gun at his head, handcuffed him and sprayed him with mace); Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir. 1995) (finding that officers violated the Fourth Amendment by pointing guns at family members, pushing them down to the ground and handcuffing them

where there was "simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used").[3]

Because the facts concerning the incident are disputed and a jury could find that Miles violated Payano's Fourth Amendment rights, the Court will deny summary judgment on Payano's Fourth Amendment seizure and excessive force claims against Officer Miles.

C.   Municipal Liability

The City of Camden argues that there are no genuine issues of material fact and the City is entitled to judgment as a matter of law on Payano's claim that it is liable under § 1983 for causing Miles' violation of Payano's Fourth Amendment rights.   Payano argues that because his expert's report establishes that the Camden Police were deliberately indifferent

---

[3] See also Robinson v. Solano County, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc) (finding the law clearly established in 2002 recognized the "general principle that pointing a gun to the head of an apparently unarmed suspect during an investigation" can constitute excessive force, "especially where the individual poses no particular danger"); Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1192-93 (10th Cir. 2001)("The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time.").

to the need to train and more closely supervise police officers generally and Officer Miles in particular, the Court must deny summary judgment on Payano's § 1983 claim against the City.

The parties agree that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978).  "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences."  Bd. Of County Com'rs of Bryan County, Okl. V. Brown, 520 U.S. 397, 407 (1997).  As the Court explained,

> [i]f a [police training] program does not prevent
> constitutional violations, municipal decisionmakers
> may eventually be put on notice that a new program is
> called for.  Their continued adherence to an approach
> that they know or should know has failed to prevent
> tortious conduct by employees may establish the
> conscious disregard for the consequences of their
> action - the deliberate indifference - necessary to
> trigger municipal liability . . .  In addition, the

> existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the moving force behind the plaintiff's injury.

Bryan County, 520 U.S. at 407-408 (citations and internal quotation marks omitted).

For example, in Connick v. Thompson, 563 U.S. 51, __, 131 S.Ct. 1350, 1358 (2011), a jury found that the Orleans Parish District Attorney's Office had violated Thompson's rights under Brady v. Maryland, 373 U.S. 83 (1963), because Harry Connick, the District Attorney/policymaker, failed to adequately train his attorneys about their duty under Brady to produce exculpatory evidence and this lack of training had caused non-disclosure of an exculpatory lab report identifying the blood type of the perpetrator in a robbery case wherein Thompson was wrongly convicted. The Supreme Court held that the § 1983 case had improperly gone to the jury because, absent a showing of a pattern of Brady violations, Thompson had not shown that Connick "was on actual or constructive notice of, and therefore deliberately indifferent to, a need for more or different Brady training." Connick, 131 S.Ct. at 1358. The Court rejected the notion that a "showing of obviousness can substitute for the pattern of violations ordinarily necessary to establish

17

municipal culpability," Connick, 131 S.Ct. at 1361, and held that the district court "should have granted Connick judgment as a matter of law on the failure-to-train claim because Thompson did not prove a pattern of similar violations that would 'establish that the policy of inaction [was] the functional equivalent of a decision by the city itself to violate the Constitution.'" Id. at 1366 (quoting Canton, 489 U.S. at 395). See also Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990) ("[T]o sustain a § 1983 action against the City, plaintiffs must [show] that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.")

A municipal policymaker is a person who is "responsible for establishing final government policy respecting" the activity in question and "whether an official had final policymaking authority is a question of state law." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). Under New Jersey law, the Chief of Police is the relevant policymaker for a municipal police department. See Hernandez v. Bor. Of Palisades Park Police Dept., 58 F. App'x 909, 913 (3d Cir. 2003)(citing N.J. Stat. Ann. § 40A:14-118). Unlike Thompson in Connick, in this case, Payano presented an expert report. The report indicates

18

that Payano's expert, Richard Rivera, examined the records maintained by the Camden City Police Department concerning the incidents involving Miles, Payano and his mother on April 18 and 19, 2012, the Internal Affairs Department's investigation of the incidents concerning Miles on April 18 and 19, 2012, as well as internal affairs annual summary reports, and use of force incident reports.  (ECF No. 64-6.)

Rivera noted that, although Payano's grandmother owned the grocery store for 25 years and she and her family parked their vehicles next to the store for many years without incident, on April 18, 2012, Officer Miles issued traffic tickets to three vehicles parked next to the store, two of which were owned by Payano's family members.  Miles reported that "at least three persons were yelling, cursing and charging at Officer Miles after she wrote the tickets [and she] requested the individuals produce identification, including from an older woman that called Miles a 'bitch' in Spanish."  Id. at 5-6.

Rivera further noted that Miles believed that Alicia Peralta, Payano's mother, had called the Internal Affairs Unit or her supervisor during the incident.  According to Rivera's report, the records showed that, once a Sgt. Tunstall arrived, Miles insisted that he obtain the identities of the three persons and she drafted disorderly conduct charges against

19

Alicia Peralta and Rahademes Bernard and mailed the summonses to them.  Later that night at about 11:00 p.m. Miles returned to the intersection where the grocery is located and issued additional summonses to Peralta.  Peralta then went to the police station to speak with Sgt. Tunstall about Miles but she was told that he was no longer on duty.  According to the report, on the morning of April 19, 2012, Peralta went to the police station and filed a formal complaint against Miles.

Mr. Rivera's review of Officer Miles' training records uncovered that her 2010 police academy record contained the following comments from an instructor:

> Miles was a bit too immature for the rigors of the academy . . .  Her study habits were nonexistent. This was evident in her academic standing average . . . .  Miles was 71st out of 71 recruits academically. Physical training is another area of concern.  Miles was lazy and just did enough to get by evidenced by her lack of progress in relation to entryway and exercise totals.  Firearms was another difficult area for Miles . . .  Her problem is a lack of concentration and lazy demeanor.  Miles will struggle with her weight if she does not continue on a PT regiment.  Additionally, Miles must be assigned a detail oriented, strong, task minded FTO or she will experience problems.

(ECF No. 64-6 at 20.)

Rivera concluded that, if Internal Affairs or the Police Chief had reviewed the training and internal affairs records of Officer Miles, as he did, their review would have indicated a

20

need for greater supervision and training of Miles.  Id. at 11

("The frequency and pattern of complaints against Miles in an

agency using an early warning system as described in Camden's

Internal Affairs Policy (CAM 0826) would have triggered a

response from the IA Commander but did not.")

In addition, Rivera's review of the Internal Affairs

records regarding excessive force complaints (which were

extremely difficult for Rivera to obtain) showed, for example,

that in 2001, only 11 of 128 excessive force allegations were

investigated; in 2002 only six out of 117 excessive force

allegations were investigated; and the 2009 audit of backlogged

internal affairs cases revealed 227 open cases.  Rivera

concluded that, although the system in place allowed

policymakers to identify officers who engaged in patterns of

misconduct, "[t]hrough their inaction and custom of non-

intervention they tacitly approved officer misconduct."  (ECF

No. 64-6 at 10.)

In its reply brief, the City argues that "[n]one of the

facts presented by Plaintiff in his Opposition Brief demonstrate

a policy or custom during the relevant time period that caused

Plaintiff's alleged injuries and there is no evidence that the

City of Camden or its Police Department or any members thereof

21

were deliberately indifferent to Plaintiff's rights." (ECF No. 66 at 18-19.)  We agree with the City.

The Supreme Court has explained that, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.  The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution."  Connick, 563 U.S. at 61-62 (citations and internal quotation marks omitted).

Even, as we must, construing the evidence in the light most favorable to Payano, including the Rivera report, this Court finds that there is insufficient evidence for a jury to find the City of Camden liable under § 1983 for causing any violation of Payano's Fourth Amendment rights.  First, much of the evidence relied upon by Rivera is very old.  It is difficult to discern how an analysis of the volume of investigated excessive force claims from a decade or more before the alleged incident could have any bearing on the City's responsibilities for Miles's conduct in 2012.  The same holds true for a backlog of excessive force investigations from the year (2009) before Miles graduated

22

from the police academy (2010) and three years before the event
at issue (2012).  While the Rivera report relies heavily on
Miles's poor performance in the academy when compared to her
classmates, nothing in the cited academic record suggests
directly or indirectly any propensity of Miles toward excessive
force or any other constitutional torts.

The remainder of Rivera's report characterizes the City of
Camden's internal affair unit as incompetent and in disarray in
2012, the year before the city force was disbanded and a county
police force was created to police the city.  Rivera's
description of the state of affair in 2012 may be true but, at
best, his conclusions merely support a claim of vicariously
liability for Miles's action based on negligence.  That,
however, is not the standard.

Plaintiff must proffer sufficient evidence from which a
reasonable juror could conclude that the relevant policymakers
adopted a policy to not investigate and not punish excessive
force used by Camden officers during the relevant time period or
were deliberately indifferent to such conduct.  Plaintiff,
however, did not take the deposition of a single Camden
policymaker, analyze Camden's institutional treatment of
excessive force complaints (as a opposed to other forms of
complaints) to show a pattern of indifference during the

23

relevant time period, or identify any policy, custom, or practice by the City, de facto or otherwise, which condoned, encouraged, and excused claims of excessive force.  If anything, the only evidence on the issue suggests the opposite.  Sgt. Tunstall cautioned Miles on the day in question that verbal abuse from citizens was to be an expected occurrence in Camden requiring restraint and apparently went out of his way to diffuse the ongoing dispute between Peralta and Miles. Moreover, Peralta's complaints resulted in an investigation of Miles's alleged conduct.

Most importantly, Plaintiff has failed to show how any Camden policy, custom, or practice caused the alleged assault on the Plaintiff.  Rivera's report focuses on the after-the-fact internal affairs investigation of Miles's conduct.  Rivera's criticism of that process, even if valid, cannot supply the missing causation.  Only in the face of some evidence that the City knew that Miles was prone to the use of excessive force and adopted a policy to ignore that fact prior to the incident with Plaintiff could the element of causation be established.  There is simply no evidence in the record to support such a claim.

In sum, absent some evidence that the City of Camden chose to ignore claims of excessive force in 2012, failed to train officers on the proper use of force, or ignored evidence that

24

Miles was prone to such conduct herself there is insufficient records evidence from which a reasonable juror could conclude the City was deliberately indifferent to the need for additional training and supervision of Miles or any other officer for that matter.  The Court will, accordingly, grant the City of Camden's motion for summary judgment.  Moreover, the Court will dismiss the Camden Police Department as a Defendant because a police department is not a person under § 1983 independent of the municipality itself.  See Padilla v. Twp. of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004); Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006).

D.   State Claims

Defendants argue that Payano has presented no facts to support his claims for assault and battery and intentional inflection of emotional distress.  (ECF No. 62 at 41-42.) Payano argues that the Court should deny summary judgment on these claims because Payano's deposition testimony creates factual disputes regarding these claims.

"A party moving for summary judgment must clear two hurdles to meet its initial burden.  It must show that (1) there are no genuine questions of material fact and (2) the party is entitled to judgment as a matter of law."  Howard Hess Dental Laboratories Inc. v. Dentsply International, Inc., 602 F.3d 237,

251 (3d Cir. 2010).  If the movant "fail[s] to show the absence of any disputed material fact . . , the District Court err[s] in granting summary judgment."  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 148 (1970).

For the same reasons we expressed regarding Plaintiff's § 1983 claim, the Court finds that Defendants have failed to carry their burden under Rule 56 of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law on Payano's New Jersey claims for assault, battery, and intentional infliction of emotional distress.  The Court will deny summary judgment on these claims.

### III.  CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part Defendants' summary judgment motion and dismisses the Camden Police Department as defendant.  An Order consistent with this Opinion will be entered.

/s/Noel L. Hillman
**NOEL L. HILLMAN, U.S.D.J.**

DATED:  February 1, 2016

At Camden, New Jersey